**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Muzaffer Cecen,<br><br>    Plaintiff,<br><br>v.<br><br>Southwest Airlines Company,<br><br>    Defendant. | No. CV-25-00196-TUC-AMM<br><br>**ORDER** |

Pending before the Court is Defendant Southwest Airlines Company's Motion to Dismiss for Failure to State a Claim. (Doc. 6.) The motion is fully briefed. (Docs. 7–8.) For the reasons discussed below, the Court will grant the motion.

**I.      BACKGROUND**

On April 29, 2025, Plaintiff Muzaffer Cecen filed the present action alleging his former-employer Defendant Southwest Airlines Company ("Defendant" or "Southwest") discriminated against him based on his national origin and religion and retaliated against him for reporting the discriminatory conduct. (Doc. 1.) Plaintiff brings his discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Arizona Civil Rights Act ("ACRA"), Ariz. Rev. Stat. § 41-1463. (*Id.* at 8–9, 11–12.) Plaintiff brings his retaliation claims under Title VII and the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981.[1] (*Id.* at 6–8, 10–11.)

In his Complaint, Plaintiff identifies himself as a "U.S. Citizen of Turkish

---

[1] Plaintiff seeks compensatory and punitive damages, reinstatement, backpay, and reasonable attorney's fees and costs. (Doc. 1 at 7–9, 11–12.)

nationality" who is a member of the Muslim faith. (*Id.* at 2.) Plaintiff alleges he was hired by Southwest in September 2010 and worked in multiple roles at the company for thirteen years. (*Id.* at 3.) During that time, Plaintiff alleges he had "a perfect attendance record" and earned "numerous accolades." (*Id.*)

Plaintiff alleges that in a Southwest break room at the Tucson Airport on or about September 8, 2023, his co-worker, Ricardo Montejano, referred to him as a "dirty Indian" and "terrorist" during a designated break with other co-workers present ("break room incident"). (*Id.* at 3–4.) Plaintiff asserts these comments are widely recognized as slurs targeting those who are perceived as Middle Eastern or Muslim. (*Id.* at 4.) In response to these comments, Plaintiff alleges he made a verbal complaint to his supervisor on September 9, 2023, and a written complaint shortly after. (*Id.* at 4, 7.)

Southwest subsequently began an internal investigation into Montejano (the "Montejano Investigation") in which it interviewed employees and allegedly determined Montejano had violated the company's anti-discrimination and harassment policy. (*Id.* at 4.) Plaintiff describes the Montejano Investigation as being "complaint-driven," "initiated only in a reactive sense following the complaint," and "limited . . . to the facts surrounding the complaint." (*Id.* at 9.) Plaintiff further alleges that Montejano and he held comparable job titles and responsibilities and that Montejano is of a different national origin and religion than Plaintiff. (*Id.* at 8.) Montejano allegedly resigned before Defendant had the opportunity to take disciplinary action against him. (*Id.* at 4.)

Days after Plaintiff made the complaint about the breakroom incident to his supervisors, he alleges Southwest Human Resources ("HR") personnel told him that the company had opened an investigation into his conduct (the "Cecen Investigation") for potentially violating the same anti-discrimination and harassment policy by allegedly using racial slurs against Montejano. (*Id.* at 4–5, 7.) Plaintiff alleges the company's investigation into his conduct was "more wide-ranging" than the Montejano Investigation and involved Southwest management-level staff interviewing employees who were not present in the break room that day and who possessed no information about that incident. (*Id.* at 5.)

Plaintiff alleges these "extraordinary efforts were taken in a dedicated effort to obtain derogatory information" about him. (*Id.*) During the Cecen Investigation, Plaintiff alleges HR communicated to him on multiple occasions "conflicting evidence" it had allegedly discovered against him. (*Id.*) Plaintiff asserts these discrepancies "raise the concern" that the company was motivated by "a desire to find a pretextual reason to terminate" him. (*Id.*)

On November 3, 2023, Southwest terminated Plaintiff. (*Id.*) While Plaintiff allegedly applied for comparable work, including for his former position at Southwest as an eligible "re-hire," Plaintiff was not hired.[2] (*Id.* at 5–6.)

On July 22, 2025, Defendant moved to dismiss this action for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) Defendant asserts Plaintiff's discrimination claims fail because the allegations do not raise a reasonable inference that Defendant subjected Plaintiff to a "wide-ranging investigation" or terminated him *because of* his religion or national origin. (*Id.* at 7–9.) Defendant further asserts Plaintiff's retaliation claims fail because Plaintiff did not have an "objectively reasonable belief" that the break room incident constituted unlawful discrimination. (*Id.* at 9–12.)

## II.     LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

"On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual

---

[2] Plaintiff alleges that on April 29, 2024, he filed a discrimination charge with the Arizona Attorney General. (*Id.* at 2.) Plaintiff further alleges that the Arizona Attorney General issued a right to sue letter on July 24, 2024. (*Id.*) Plaintiff asserts his state law claim is timely as it was brought within one year of April 29, 2024. (*Id.*)

allegations and construes all factual inferences in the light most favorable to the plaintiff." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025). "However, a court is not required to accept as true legal conclusions couched as factual allegations." *Id.* (citing *Iqbal*, 556 U.S. at 678.) The task of determining if a plaintiff has stated a plausible claim to survive a motion to dismiss is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

#### a. Plaintiff fails to plausibly allege discrimination under Title VII and the ACRA.

Counts II and IV of Plaintiff's Complaint assert national origin and religious discrimination claims under Title VII and ACRA. (Doc. 1 at 8–9, 11–12.) Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736 (9th Cir. 2004) (the ACRA is "'generally identical' to Title VII, and therefore 'federal Title VII case law [is] persuasive" in its interpretation (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 909–10 n.3 (Ariz. 1983))). At the motion-to-dismiss stage, Federal Rule of Civil Procedure 8(a) governs the pleading standard for discrimination claims.[3] *See Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (reiterating that discrimination claims must "contain sufficient factual allegations that plausibly suggest entitlement to relief").

Here, Plaintiff's discrimination claims fail because they do not plausibly allege a causal connection between Plaintiff's protected characteristics and Southwest's alleged

---

[3] Although *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–11 (2002), a plaintiff may allege a prima facie disparate treatment case under its framework by showing: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably or other circumstances surrounding the adverse employment action give rise to an inference of discrimination," *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1155 (9th Cir. 2025).

- 4 -

adverse actions. While Plaintiff alleges that he was employed by Southwest and is Turkish American and Muslim, these allegations alone do not support a finding that Southwest's investigation or termination of Plaintiff were *because of* or *motivated by* his national origin or religion. Plaintiff's only basis to support his discrimination claims is that the Cecen Investigation was more "wide-ranging" and less favorable than the Montejano Investigation. (Doc. 1 at 4–5.) But Plaintiff fails to allege any facts to establish that Southwest's expanded investigation or subsequent termination of Plaintiff were based on discriminatory animus because of his protected characteristics. To the contrary, Plaintiff's own allegations acknowledge that he was reported to have violated the same anti-discrimination and harassment policy as Montejano, which triggered Southwest's investigation into Plaintiff. Significantly, Plaintiff does not allege that the Cecen Investigation was baseless or that it was somehow linked to facts allowing this Court to reasonably infer discrimination.

To this same end, Plaintiff fails to allege how Montejano is a similarly situated individual outside his protected class who was treated more favorably by Southwest, other than by Plaintiff's conclusory claims that the Montejano Investigation was narrower in scope and that Montejano is of a different national origin and religion than Plaintiff. (*Id.* at 5, 8.) Again, Plaintiff's own allegations establish that Montejano was subjected to an HR investigation for violating the same company anti-discrimination and harassment policy as Plaintiff and that Montejano subsequently resigned. (*Id.* at 4.)

Finally, Plaintiff's assertions that Southwest presented "conflicting evidence" motivated by "a desire to find a pretextual reason to terminate" are similarly conclusory and fail to explain what the conflicting evidence is, who the relevant decision maker was, or how that evidence supports an inference of intentional discrimination. Even looking at the circumstances surrounding Southwest's actions in the light most favorable to Plaintiff, his allegations, as pleaded, are insufficient for the Court to reasonably infer disparate treatment based on his national origin or religion. Because Plaintiff's discrimination claims do not sufficiently state a claim for relief, Counts II and IV are dismissed.

### b. Plaintiff fails to plausibly allege retaliation under Title VII and Section 1981.

Counts I and III of Plaintiff's Complaint assert retaliation under Title VII and Section 1981. (Doc. 1 at 6–8, 10–11.) Title VII prohibits an employer from engaging in an adverse employment action "because [the employee] has opposed . . . an unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation" into alleged unlawful status-based workplace discrimination.[4] 42 U.S.C. § 2000e-3(a) (referred to as the "opposition" and "participation" clauses); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003) (the "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action"). "A successful retaliation claim must establish that (1) the employee engaged in a protected activity, (2) the employer took an adverse employment action against the employee, and (3) the employer would not have taken the adverse action but for a design to retaliate." *Maner v. Dignity Health*, 350 F. Supp. 3d 899, 906 (D. Ariz. 2018), *aff'd*, 9 F.4th 1114 (9th Cir. 2021) (citing *Nilsson v. City of Mesa*, 503 F.3d 947, 953–54 (9th Cir. 2007)).

Plaintiff alleges that (1) he complained to his supervisors about his co-worker Montejano calling him a "dirty Indian" and "terrorist," and he participated in the Montejano Investigation;[5] (2) within days of this complaint, Defendant initiated the Cecen Investigation and terminated Plaintiff two months later; and (3) the temporal proximity between Plaintiff's complaint and Defendant's actions give rise to an inference that they are causally connected. (Doc. 1 at 6–7.) In response, Defendant argues the first element (engagement in a protected activity) is legally flawed because Plaintiff could not have had the "objectively reasonable belief" that the break room incident created a hostile work

---

[4] "Title VII defines the term 'unlawful employment practice' as discrimination on the basis of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination." *U. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 359–60 (2013).

[5] To the extent Plaintiff asserts his alleged participation in the Montejano Investigation is protected under § 2000e-3(a)'s participation clause, this argument is foreclosed by *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) (holding the participation clause applies only to Equal Employment Opportunity Commission proceedings). Plaintiff did not participate in any formal proceedings until after his termination. (*See* Doc. 1 at 2.) As such, his retaliation claims rest only on § 2000e-3(a)'s opposition clause.

environment based on his religion or national origin.[6] (Doc. 6 at 11.)

"To establish the first element of a prima facie case, [a plaintiff] must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII." *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526–27 (9th Cir. 1994). A retaliation claim can succeed, even if the opposed conduct is found to be lawful, if the conduct "fairly fall[s]" within Title VII's protections. *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)). Further, a co-worker's derogatory comments do not constitute an employer's "unlawful employment practice" for a retaliation claim, unless the co-worker's acts can be imputed to the employer. *See Silver v. KCA, Inc.*, 586 F.2d 138, 141–42 (9th Cir. 1978) (reporting co-worker's use of a racial slur was not a protected activity because the comment was "an act of discrimination by a private individual" and not an "unlawful employment practice"); *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013–14 (9th Cir. 1983) (employee with supervisory duties was an agent of the employer); *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 755–56 (9th Cir. 1997) (collecting cases).

Here, Plaintiff alleges one incident in which a non-supervisory co-worker called him a "dirty Indian" and a "terrorist." (Doc. 1 at 3–4.) Plaintiff makes no allegation that Southwest or any of its supervisory personnel approved of Montejano's comments, either before or after the incident, and Plaintiff acknowledges that Southwest promptly initiated the Montejano Investigation that ended in Montejano's resignation. (*Id.* at 4.) While

---

[6] While Plaintiff asserts that he "does not bring a hostile work environment claim," he proceeds to state that his "retaliation claims are viable because he reasonably perceived . . . that he was a victim of a hostile work environment" and he "reasonably believed that his breakroom experience had created a hostile work environment." (Doc. 7 at 2–3.) To the extent Plaintiff relies on a hostile work environment theory to support his retaliation claims, the Court considers whether Southwest's conduct "was sufficiently severe or pervasive to alter the conditions of [his] employment." *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (citing *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 997 (9th Cir. 2010)).

certainly offensive, no reasonable person could have believed this isolated incident by a co-worker was an "unlawful employment practice" by Southwest or altered the terms of Plaintiff's employment. *See Breeden*, 532 U.S. at 271 ("No reasonable person could have believed that the single incident [. . .] violated Title VII's standard."). Indeed, any such conclusion runs contrary to Title VII's intent to not impose a "general civility code" on the American workplace. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *see also Silver*, 586 F.2d at 141 ("The specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees."). As such, even construing the facts in the light most favorable to him, Plaintiff fails to allege that he reasonably believed his reporting of his co-worker's derogatory comments was a protected activity.

The Court further finds Plaintiff does not plausibly allege Southwest's actions were based on a "design to retaliate." *See Nassar*, 570 U.S. at 360, 362 (requiring a plaintiff to show his or her "protected activity was a but-for cause of the alleged adverse action by the employer"). While temporal proximity between a plaintiff's protected activity and an employer's adverse action may support an inference of causation in some cases, *see Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003), here, the totality of the allegations makes that inference implausible. Plaintiff does not point to any specific acts or omissions by Southwest that allows the Court to reasonably infer, based on this Court's "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, that Southwest's alleged conduct was done *because of* Plaintiff's opposition to the break room incident.

For these reasons, Counts I and III are also dismissed.

### c. Plaintiff may file a First Amended Complaint.

Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted. However, because the deficiencies mentioned above could be cured by amendment, Plaintiff may submit a First Amended Complaint within thirty days. *See, e.g.*, Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so

requires."); *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815–16 (9th Cir. 2020) (leave to amend should be given when amendment may not be futile).

Plaintiff is advised that a first amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat the original complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a first amended complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED**. (Doc. 6.)

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED**. (Doc. 1.)

**IT IS FURTHER ORDERED** that Plaintiff shall have until **March 6, 2026** to file a First Amended Complaint. If Plaintiff chooses not to file a First Amended Complaint, the above-captioned action may be dismissed without further notice to the parties.

Dated this 5th day of February, 2026.

Honorable Angela M. Martinez
United States District Judge